O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALAN FEIMAN, | Case No.<br>CV 12-3549-JGB (JCx) |
| Plaintiff, | **ORDER** |
| v. | **[Motions filed August 23, 2013 and August 24, 2013]** |
| CITY OF SANTA MONICA,<br>CHIEF OF POLICE TIMOTHY<br>JACKMAN, individually and<br>as a peace officer,<br>RUSSELL GRIMMOND,<br>individually and as a<br>peace officer; LOUIS<br>MARIONO, individually and<br>as a peace officer;<br>MICHELLE DIMAS,<br>individually; DOES 1-50,<br>inclusive, | |
| Defendants. | |

Before the Court are a Motion Summary for Judgment as to Plaintiff's First Cause of Action filed by Plaintiff Alan Feiman (Doc. No. 42) and Motion for Summary Judgment and Ex Parte Application filed by Defendants City of Santa Monica, Louis Marioni, and Michelle Dimas (Doc. Nos. 45, 46, 51.)  After

considering the papers in support of and in opposition to the Motions and arguments presented at the September 23, 2013 hearing, the Court GRANTS Defendant's Ex Parte Application, DENIES Plaintiff's Motion for Summary Judgment, and DENIES in part and GRANTS in part Defendants' Motion for Summary Judgment.

## I.  PROCEDURAL HISTORY

Plaintiff Alan Feiman ("Feiman") filed a Complaint against Defendants City of Santa Monica ("Santa Monica"), Chief of Police Timothy Jackman ("Jackman"), Russell Grimmond ("Grimmond"), Louis Marioni ("Marioni"), and Michelle Dimas ("Dimas") in the Los Angeles District Court on April 24, 2012. Plaintiff's Complaint alleges claims for violation of civil rights (42 U.S.C. § 1983), unlawful custom and practice (42 U.S.C. § 1983), false imprisonment, intentional infliction of emotional distress, negligence, negligent employment/retention/supervision, and violation of California Civil Code § 52.1. (See Complaint, Doc. No. 1.) Defendants filed an answer on September 10, 2012 and October 23, 2012.  (See Doc. Nos. 14, 17.)

On May 28, 2013, the Court dismissed Defendant Timothy Jackman from the Complaint, with prejudice. (Doc. No. 28.)  On August 19, 2013, the Court dismissed

Defendant Russell Grimmond from the Complaint, with prejudice.  (Doc. No. 39.)

Plaintiff filed a Motion for Summary Judgment ("Pl. MSJ") on August 23, 2013 (Doc. No. 42), attaching:

    A. Statement of Uncontroverted Facts ("Pl. SUF," Doc. No. 42-1); and

    B. Declaration of Thomas E. Beck ("Beck Decl.") (Doc. No. 42-2), attesting to:

- Deposition of Louis Marioni ("Marioni Depo.," Ex. A),
- Santa Monica Police Department Alcohol Intoxication Report (Ex. B),
- Deposition of Scott McGowan ("McGowan Depo.," Ex. C),
- Surveillance Camera Video – 3rd & Arizona – SW Corner (Ex. D),
- Surveillance Camera Video – 3rd & Arizona – SE Corner (Ex. E), and
- Surveillance Camera Video – 3rd & Arizona – NE Corner (Ex. F).

On August 30, 2013, Defendants filed an Opposition to Plaintiff's MSJ (Doc. No. 53), attaching:

    A. Declaration of Carol Ann Rohr (Doc. No. 53, "Rohr Decl."), attesting to:

- Jail Video Disk No. 1 (Ex. A),[1]

---

[1] The Court notes that jail video disks that Defendants lodged were unnecessarily complicated to view.  It is burdensome for the Court to follow at

(continued . . .)

3

- Marioni Depo. (Ex. B),
- Deposition of Alan Feiman ("Feiman Depo.," Ex. C),
- Plaintiff's September 16, 2011 Written Communication (Ex. D),
- Deposition of Michelle Dimas ("Dimas Depo.," Ex. E), and
- Arrestee Medical Screening Form (Ex. F);

B. Declaration of Craig Haney ("Haney Decl.," Doc. No. 54-1);

C. Declaration of Louis Marioni ("Marioni Decl.," Doc. No. 54-1);

D. Statement of Genuine Disputes ("Defs. SGD," Doc. No. 55); and

E. Objections to Evidence (Doc. No. 56).

Plaintiff replied on September 6, 2013. (Doc. No. 61.)

Defendants City of Santa Monica, Marioni, and Dimas (collectively, "Defendants") filed a Motion for Summary Judgment ("Def. MSJ," Doc. Nos. 45, 46)[2] on August 24, 2013, attaching:

---

( . . . continued)
least six steps and use an unfamiliar program, DVTel, that "can be slow," in order to view the files.  Any video disks lodged in the future should be easily viewable using a mainstream program, such as Windows Media Player, or a traditional DVD player.

[2] Defendants filed two MSJs with identical Memoranda of Points and Authorities and different attachments.  The Court construes these filings as filings in support of one MSJ.  In the event of future filing errors, the Parties shall file a Notice of

(continued . . .)

4

A. Declaration of Craig Haney ("Haney Decl.," Doc. No. 45-2);

B. Declaration of Louis Marioni ("Marioni Decl.," Doc. No. 45-2);

C. Declaration of Al Venegas ("Venegas Decl.," Doc. No. 45-2);

D. Santa Monica Police Department Alcohol Intoxication Report (Ex. A);

E. Marioni Depo. (Ex. B);

F. Jail Video 1 (Ex. C);

G. Feiman Depo. (Ex. D);

H. Plaintiff's September 11, 2011 Written Communication (Ex. E);

I. Dimas Depo. (Ex. F);

J. Arrestee Medical Screening Form (Ex. G);

K. ISIS Prisoner/Visitor Call History (Ex. H);

L. Jail Intoxication Assessment Report (Ex. I);

M. Booking and Property Report (Ex. J); and

N. Plaintiff's Complaint (Ex. K).

On August 26, 2013, Defendants filed an unopposed Ex Parte Application requesting that Defendants' MSJ be considered timely filed. (Doc. No. 51.)  The Court GRANTS Defendants' Ex Parte Application.

On September 3, 2013, Plaintiff filed an Opposition to Defendants' MSJ (Doc. No. 58), attaching:

_____

( . . . continued)
Errata with a correct version of the full filing attached.

A. Responses to Defendants' SUF ("Pl. SGD," Doc. No. 58-1) and

B. Declaration of Thomas E. Beck ("Beck Decl.," Doc. No. 58-2), attesting to:

- Declaration of Alan Feiman ("Feiman Decl.," Ex. A),
- Declaration of Ron Cardiel ("Cardiel Decl.," Ex. B),
- Declaration of Jimm Hughey ("Hughey Decl.," Ex. C),
- Surveillance Camera Video – 3rd & Arizona – SW Corner (Ex. D),
- Arrestee Medical Screening Form (Ex. E),
- Deposition of Michelle Dimas ("Dimas Depo., Ex. F),
- Surveillance Camera Video – 3rd & Arizona – NE Corner (Ex. G),
- Santa Monica Police Department's Inner Sally Port Surveillance Video BK6 (Ex. H),
- Deposition of Russell Grimmond ("Grimmond Depo.," Ex. I),
- Marioni Depo. (Ex. J),
- McGowan Depo. (Ex. K), and
- Santa Monica Police Department Observation Questionnaire (Ex. L).

On September 9, 2013, Defendants replied (Doc. No. 62), attaching:

6

A. Declaration of David N. Glasser ("Glasser
   Decl.," Doc. No. 64-1);

B. E-mail from Plaintiff's Counsel to Defendants'
   Counsel (Ex. A);

C. Feiman Depo. (Ex. B);

D. Dimas Depo. (Ex. C);

E. Surveillance Camera Video – 3rd & Arizona – SE
   Corner (Ex. D); and

F. Marioni Depo. (Ex. E).

## II.  LEGAL STANDARD[3]

A motion for summary judgment shall be granted when
there is no genuine issue as to any material fact and
the moving party is entitled to judgment as a matter of
law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247-48 (1986).  The moving party
must show that "under the governing law, there can be
but one reasonable conclusion as to the verdict."
Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to
demonstrate that it is entitled to summary judgment.
Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998);
Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,
707 F.2d 1030, 1033 (9th Cir. 1983).  The moving party

---

[3] Unless otherwise noted, all references to "Rule"
refer to the Federal Rules of Civil Procedure.

bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out there is an absence of evidence supporting the non-moving party's case.  <u>Id.</u>

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u>, 14:144.  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010) (citing <u>Anderson</u>, 477 U.S. at 252).  "The non-moving party must do more than show there is some 'metaphysical doubt' as

to the material facts at issue." In re Oracle, 627 F.3d at 387 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991); T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987).

Cross-motions for summary judgment do not necessarily permit the judge to render judgment in favor of one side or the other. Starsky v. Williams, 512 F.2d 109, 112 (9th Cir. 1975). The Court must consider each motion separately "on its own merits" to determine whether any genuine issue of material fact exists. Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). When evaluating cross-motions for summary judgment, the court must analyze whether the record demonstrates the existence of genuine issues of material fact, both in cases where both parties assert that no material factual issues exist, as well as where the parties dispute the facts. See Fair Housing Council of Riverside County, 249 F.3d at 1136 (citation omitted).

9

1

2                          **III. FACTS**

3      **A.   Evidentiary Objections**

4

5          "A trial court can only consider admissible

6   evidence in ruling on a motion for summary judgment."

7   Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th

8   Cir. 2002); see Fed. R. Civ. Proc. 56(e).  At the

9   summary judgment stage, district courts consider

10  evidence with content that would be admissible at

11  trial, even if the form of the evidence would not be

12  admissible at trial.  See Fraser v. Goodale, 342 F.3d

13  1032, 1036 (9th Cir. 2003); Block v. City of Los

14  Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001).

15         Defendants object to some of Plaintiff's proposed

16  facts on the basis that they are irrelevant, lack

17  foundation, and speculative.  (See Defs.' Objections to

18  Evidence, Doc No. 56.)  "[O]bjections to evidence on

19  the ground that it is irrelevant, speculative, and/or

20  argumentative, or that it constitutes an improper legal

21  conclusion are all duplicative of the summary judgment

22  standard itself" and are thus "redundant" and

23  unnecessary to consider here.  Burch v. Regents of

24  Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D.

25  Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986)

26  ("Factual disputes that are irrelevant or unnecessary

27  will not be counted.").  Thus, the Court does not

28  consider any objections on the grounds that the

evidence lacks foundation, is misleading, vague, ambiguous, conclusory, speculative, conjecture, compound, irrelevant, or argumentative.  These objections are challenges to the characterization of the evidence and are improper on a motion for summary judgment.

Additionally, Defendants object to these facts based on Federal Rules of Evidence 602, 701, and 702. The Court overrules these objections because the surveillance videos are not witness testimony that requires personal knowledge and Defendants have not shown that the surveillance videos are improper lay or expert testimony.

**B.   Disputed and Undisputed Facts**

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for purposes of the MSJs.  L.R. 56-3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R. Civ. P. 56(e)(2) (stating that where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").  All disputed facts are explicitly designated as such.

On August 13, 2011, Plaintiff was doing a Harpo Marx impersonation, outside the performer's zone, in Santa Monica, California. (Pl. SUF ¶¶ 1, 2; Def. SUF ¶ 3.)  Santa Monica Officers approached Plaintiff around 2:45 p.m., while he was seated on a folding chair with a harp, in order to move Plaintiff out of the pedestrian lane. (Pl. SUF ¶¶ 1, 3.)

Defendants contend that Defendant Marioni was present during the first encounter and asked Plaintiff where his permit was, and Plaintiff responded that he left his permit in his car. (See Pl. SUF ¶¶ 4, 5.) Defendants present evidence that Defendant Marioni explained that Plaintiff could not perform where he was located, he needed a permit to perform, and advised Plaintiff to get the permit from his car. (See Pl. ¶ SUF 5; Def. ¶ SUF 7.)  Plaintiff disputes that Defendant Marioni was present at the first encounter.[4] (Feiman Decl. iso Opp. ¶ 5.)

_____

[4] Curiously, Plaintiff provides the fact that Defendant Marioni was present at the initial encounter as an uncontroverted fact in his MSJ. (See e.g., Pl. SUF ¶¶ 1, 4, 5.)  He states that for the purposes of his MSJ "[Defendant] Feiman's version of the facts are offered only as background and are not offered to support the motion.  Giving full credit to the defendants' evidence, plaintiff submits there was not probable cause to arrest him for any offense . . . .") The Court assumes that Plaintiff was attempting to demonstrate that even under Defendants' version of the facts he is entitled to summary judgment.  However, the Statement of Uncontroverted Facts "shall set forth the material facts as to which the moving party contends there is no genuine dispute."  L.R. 56-1.  The Court cautions Plaintiff that this highly confusing strategy is not appropriate and future presentation of

(continued . . .)

12

1
2
3
4
5
6
7
8

    The initial contact between the officers and
Plaintiff lasted less than two minutes, during which
Defendant Marioni testified he noticed a slur in
Plaintiff's speech and a faint odor of alcohol.  (Pl. ¶
SUF 8; Marioni Depo. 135:3-22.)  Plaintiff then began
gathering his belongings and the officers left him.
(Pl. ¶ SUF 10.)  Plaintiff then spoke to Ron Cardiel.
(Pl. Decl. iso Opp. ¶ 9.)

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

    Defendant Marioni and Officer McGowan came into
contact with Plaintiff fifteen to twenty minutes after
the initial contact.  (Pl. ¶ SUF 18.)  Plaintiff
approached Defendant Marioni, stating "Where's your
permit? Where's your permit?"  Defendant Marioni
testified that Plaintiff appeared agitated when he made
this statement while waving a laminated piece of paper,
which made Defendant Marioni feel threatened.  (Pl. SUF
¶¶ 20, 21.)  Plaintiff does not deny that he made this
statement, but contends that he was not angry or
agitated, and he did not wave his permit in Defendant
Marioni or Officer McGowan's face.  (Pl. Decl. iso Opp.
¶ 13.)  Defendant Marioni then pulled the permit out of
Plaintiff's hands and refused to give it back to him.
(Pl. ¶¶ SUF 22, 23.)  Defendant Marioni arrested
Plaintiff for violating Cal. Penal Code § 647(f), and

25
26
27
28

───────────────────
( . . . continued)
conflicting facts may be determined to be sham facts
that will not be considered.

13

did not tell Plaintiff why he was under arrest.  (Pl. ¶¶ SUF 23.)

Defendant Marioni filled out an alcohol intoxication report after Plaintiff's arrest; he did not mark the boxes reflecting that Plaintiff was unable to exercise care for his own safety or safety of others, or that he interfered with, obstructed, or prevented the free use of the street, sidewalk, or public way.  (Pl. SUF ¶¶ 27, 28, 29, 31.)

Plaintiff was fingerprinted and photographed at 4:30 p.m.  (Def. ¶ SUF 26.)  The Medical Screening Report reflects the fact that Plaintiff took four prescribed Klonopin and Paxil on August 12, 2011, the day before his arrest.  (Medical Screening Report, Ex. G.)  He took them at 9:00 p.m. that night.  (Def. ¶ SUF 22.)  Defendants present evidence that Officer Dimas offered Plaintiff phone calls, but he refused them at booking, around 4:40 p.m.  (See Def. SUF ¶ 25.) Plaintiff disputes this fact and maintains that he repeatedly asked Defendant Dimas and others to use the telephone, but his requests were denied.  (Feiman Decl. iso Opp. ¶ 16.)

## IV.  DISCUSSION

### A.   Section 1983

#### 1. Section 1983 Claims Against Defendant Marioni

<u>Qualified Immunity</u>

Defendants argue that Defendant Marioni should be granted qualified immunity and is entitled to summary judgment on the Section 1983 claims against him. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 281 (2009).  In order to be clearly established, "the contours of the right must be sufficiently clear" so as to be obvious to a reasonable official.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1978).  To meet this standard, the right alleged to be violated cannot be only the "general constitutional guarantee (e.g., the Fourth Amendment freedom from unreasonable searches and seizures), but its application in a particular context." <u>Baker v. Racansky</u>, 887 F.2d 183, 186 (9th Cir. 1989)(citation omitted).  "For a right to be 'clearly established,' 'the contours of the right must

15

be sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Ammons v. Wash. Dep't of Social & Health Servs., 648 F.3d 1020, 1026 (9th Cir. 2011)(quoting Anderson, 483 U.S. at 640).  Where a defendant's entitlement to qualified immunity turns on genuinely disputed issues of fact, summary judgment is not appropriate.  Adams v. Kraft, 828 F. Supp. 2d 1090, 1115 (N.D. Cal. 2011).

Unlawful Seizure

Plaintiff alleges that his arrest for public intoxication under California Penal Code § 647(f) was an unlawful seizure in violation of the Fourth Amendment.  (Compl. ¶ 14.)  Plaintiff argues that he is entitled to summary judgment on this claim because he was arrested without probable cause.  Defendants move for summary judgment on the grounds that probable cause existed for Plaintiff's arrest and detention because he exhibited signs of being under the influence of alcohol or prescription medication.

A warrantless arrest by an officer is reasonable under the Fourth Amendment where there is a probable cause to believe that a criminal offense has been or is being committed.  Devenpeck v. Alford, 543 U.S. 146, 153 (2004).  "Probable cause exists when, at the time of arrest, the agents know reasonable trustworthy information sufficient to warrant a prudent person in

16

believing that the accused had committed or was committing an offense." Allen v. City of Portland, 73 F.3d 232, 237 (9th Cir. 2005)(citation and quotation omitted). Probable cause depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. Devenpeck, 543 U.S. at 153. If an arresting officer could have believed an arrest to be lawful, in light of clearly established law and the information the officer possessed at the time of the arrest, the officer is entitled to qualified immunity. Anderson, 483 U.S. at 641. This includes law enforcement officials who "reasonably mistakenly conclude that probable cause is present." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Plaintiff was arrested pursuant to California Penal Code § 647(f), which provides that it is unlawful for a person to be "found in any public place under the influence of intoxicating liquor, any drug, controlled substance, [or] toluene . . . in a condition that he or she is unable to exercise care for his or her own safety or the safety of others." Cal. Penal Code § 647(f). Therefore, Defendant Marioni is entitled to summary judgment if there is no genuine issue, based on the facts before the Court, regarding whether it was reasonable for Defendant Marioni to believe Plaintiff was intoxicated to the point at which he was unable to care for his own safety or the safety of others.

17

Defendants argue that Marioni had probable cause to arrest Plaintiff based on a slur in Plaintiff's speech, Plaintiff's aggressive attitude, and a scent of alcohol.  (Def. MSJ at 2.)  The Alcohol Intoxication Report Defendant Marioni completed reflects that he detected the faint odor of alcohol on Plaintiff's breath, but it was not the typical strong odor that Defendant Marioni would expect on an intoxicated person, and Plaintiff's speech was thick and slurred. (Alcohol Intoxication Report, Marioni Depo. at 139:20-25.)  Additionally, Defendant Marioni testified that Plaintiff seemed extremely agitated, without any provocation.  This led Defendant Marioni to believe that Plaintiff may have been under the influence of alcohol or another substance.  (Marioni Depo. at 135:3-13; 137:21-24; 139:3-13; 139:21-25; 140:1-22.)  Officer McGowan, who was present at the first and second encounters with Plaintiff, testified that he noticed a slight slur in Plaintiff's speech and Plaintiff seemed excited and agitated.  (McGowan Depo. at 106:7-25.)

Plaintiff argues that he did not exhibit the behaviors or characteristics described by Defendant Marioni, and there was no evidence that he was unable to care for his own safety or the safety of others.  He has presented evidence that Ron Cardiel, who conversed with Plaintiff between Plaintiff's first and second encounters with the officers, did not smell alcohol on

Plaintiff's breath and did not notice that Plaintiff
slurred his speech or acted in any way that would make
him believe Plaintiff was intoxicated.  (Cardiel Decl.
¶ 7, Feiman Decl. ¶¶ 9, 10.)  Plaintiff has also
presented evidence that he stopped drinking alcoholic
beverages in 1998 or 1999 and the prescription drugs
Plaintiff took would not produce the behavior described
in the Arrest Report. (Feiman Decl. iso Opp. ¶¶ 2, 19;
Hughey Decl. ¶ 6.)  While there is evidence that
Plaintiff's taking an entire day's prescribed dosage at
9:00 p.m. the night before the arrest would support the
behavior described in the arrest record, this is not
definitive evidence that Plaintiff did in fact exhibit
those behaviors.  (Glaser Decl. ¶ 6.)  Additionally,
the inmate intake form shows that the jailer circled
"no" to the question of whether Plaintiff appeared to
be under the influence of alcohol or drugs, but
Defendant Dimas also circled "yes" "because of what
[Plaintiff] was brought in for and the charge."
(Intake Form, Ex. L; Dimas Depo. 154:8-19.)

     Plaintiff primarily relies on surveillance camera
footage of the intersection of Third Street and Arizona
Avenue in order to prove that he "was completely in
possession of his faculties," making it unreasonable
for Defendant Marioni to determine there was probable
cause to arrest him for a violation of § 647(f). (Pl.
MSJ at 14.)  The footage provided is unclear and only

provides a distant view of Plaintiff and the arrest.
The Court cannot determine from the footage that
Plaintiff did not exhibit signs of intoxication.
Similarly, the Court cannot determine that Plaintiff
was "unstable" or "walk[ed] in a weaving and unbalanced
manner" from the jail video footage provided by
Defendants.

In light of the conflicting evidence, the Court
finds that there is a genuine issue of material fact as
to whether a reasonable officer would have believed
that there was probable cause to arrest Plaintiff for
public intoxication.  See e.g., Lum v. County of San
Joaquin, No. 10-1807, 2012 WL 1027667, at *6 (E.D. Cal.
March 23, 2012); Kassim Abdulkhalik v. City of San
Diego, No. 08-1515, 2009 WL 4282004 (S.D. Cal. Nov. 25,
2009) (denying summary judgment based on qualified
immunity on claim for arrest without probable cause
because there was an triable issue of fact as to the
facts and circumstances within the defendant's
knowledge at the time he arrested the plaintiff).

Therefore, the Court DENIES Plaintiff's Motion for
Summary Judgment and DENIES Defendants' Motion for
Summary Judgment as to Plaintiff's unlawful seizure
claim.

Excessive Force

1  Plaintiff has withdrawn his excessive force claim.

2  (Sept. 30, 2013 Hearing Tr.)  Thus, the Court GRANTS

3  Defendants' Motion for Summary Judgment as to

4  Plaintiff's excessive force claim.

5

6  First Amendment Retaliation

7

8  Plaintiff argues that Defendant Marioni retaliated

9  against him by falsely arresting and detaining him for

10  jokingly asking Defendant Marioni "so where's your work

11  permit" and telling him that he could divert his

12  attention back to Plaintiff's permit and return the

13  permit.  To prevail on a First Amendment retaliation

14  claim, a plaintiff must show that 1) the defendant's

15  action "would chill or silence a person of ordinary

16  firmness from future First Amendment activities" and 2)

17  the defendant's "desire to cause the chilling effect

18  was a but for cause of the defendant's action." Skoog

19  v. County of Clackamas, 469 F.3d 1221, 1232 (9th Cir.

20  2006) (internal quotation marks and citation omitted);

21  see also Ford v. City of Yakima, 706 F.3d 1188, 1193

22  (9th Cir. 2013).  However, "[a] plaintiff may not

23  recover merely on the basis of a speculative 'chill'

24  due to generalized and legitimate law enforcement

25  initiatives." Mendocino Environmental Center v.

26  Mendocino County, 14 F.3d 457, 464 (9th Cir. 1994).

27

28

The First Amendment protects verbal criticism, challenges, and profanity directed at police officers. U.S. v. Poocha, 259 F.3d 1077 (9th Cir. 2001). The Ninth Circuit has held that "retaliatory police action such as an arrest or search and seizure would chill a person of ordinary firmness from engaging in future First Amendment activity." Ford, 706 F.3d at 1193. As discussed above, there is a genuine issue of material fact as to whether a reasonable officer would find probable cause to arrest Plaintiff for public intoxication. Additionally, it is clearly established that police officers may not use their authority to retaliate against protected speech, even if probable cause exists. Id. at 1195-96 ("Duran clearly established that police officers may not use their authority to punish an individual for exercising his First Amendment rights, while Skoog clearly established that a police action motivated by retaliatory animus was unlawful, even if probable cause existed for that action."). Therefore, the Court cannot find that Defendant Marioni is unequivocally entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

Thus, the Court DENIES Defendant's Motion for Summary Judgment as to Plaintiff's First Amendment retaliation claim.

## 2. Section 1983 Claims Against Defendant Dimas

Plaintiff alleges a Fourteenth Amendment due process claim based on an alleged deprivation of a state-created liberty interest arising out of California Penal Code § 851.5.  Section 851.5 requires that an arrestee be permitted to make three telephone calls immediately upon being booked or no later than three hours after arrest, with exceptions only for physical impossibility.

The Ninth Circuit held in Carlo v. City of Chino, 105 F.3d 493, 502 (9th Cir. 1997), that it was clearly established that California Penal Code § 851.5 creates a liberty interest protected by the Fourteenth Amendment.  Therefore, officials are not entitled to qualified immunity for clear violations of § 851.5. See id.  ("Given the clarity of the statute and the law defining liberty interests at the time, no reasonable officer could have believed that denying [the plaintiff] telephone calls did not violate her constitutional rights.")  Plaintiff contends that Defendant Dimas violated his due process rights by repeatedly refusing him telephone calls.  (Pl. Opp. at 18.)  He testified that Defendant Dimas ignored his requests to make phone calls over the seven hours he was in custody.  (Feiman Decl. iso Opp. ¶ 16.) However, Dimas recorded at 4:40 p.m. on Plaintiff's Prisoner Visitor/Call History that Plaintiff refused

his phone calls at booking.  (Prisoner Visitor/Call History, Ex. H.)  Drawing all inferences in Plaintiff's favor, there is sufficient evidence on the record to create a triable issue of fact regarding whether Defendant Dimas violated Plaintiff's rights under California Penal Code § 851.5 by knowingly ignoring Plaintiff's requests for a phone call.

Thus, the Court DENIES Defendants' Motion for Summary Judgment on Plaintiff's due process violation claim.

### 3. Section 1983 Conspiracy and <u>Monell</u> Claims

Plaintiff has abandoned his conspiracy and <u>Monell</u> claims.  (Pl. Opp. at 1-2.)  Thus, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's Section 1983 conspiracy claim and Plaintiff's <u>Monell</u> claim.

### B.  False Imprisonment

Under California law, false imprisonment is "the violation of the personal liberty of another without lawful privilege."  <u>Arpin</u>, 261 F.3d 912, 920 (9th Cir. 2001).  "A warrantless arrest by a peace officer for a misdemeanor is lawful only if the officer has reasonable cause to believe the misdemeanor was committed in the officer's presence."  <u>Johanson v.</u>

24

<u>Dept. of Motor Vehicles</u>, 36 Cal. App. 4th 1209, 1216 (1995). As discussed above in the analysis of Plaintiff's § 1983 unreasonable seizure claim, there is a triable issue of fact regarding whether or not Defendant Marioni had probable cause to arrest Plaintiff.

Thus, the Court DENIES Defendants' Motion for Summary Judgment and DENIES Plaintiff's Motion for Summary Judgment as to Plaintiff's false imprisonment claim.[5]

**C.   Intentional Infliction of Emotional Distress**

Plaintiff's claim for intentional infliction of emotional distress is based on his argument that his arrest without probable cause and the violation of his due process rights was extreme and outrageous behavior. (Pl. Opp. at 19.)  To succeed on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate: 1) extreme and outrageous

---

[5]  The Court notes that while Defendants move for summary judgment on Plaintiff's false imprisonment and intentional infliction of emotional distress claims, Defendants do not provide any argument on this claim in the supporting memorandum.  However, because Plaintiff opposed summary judgment on these claims in his Opposition and he has not been prejudiced, the Court considers whether summary judgment is appropriate on these claims.  Pursuant to Local Rule 7-5, moving papers shall be served and filed with "[a] brief but complete memorandum in support thereof and the points and authorities upon which the moving party will rely." In the future, the Court will not consider motions unsupported by the memorandum of points and authorities.

conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; 2) the plaintiff suffered severe or extreme emotional distress; and 3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.  <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 903 (1991). Outrageous conduct requires that the conduct is so extreme "as to exceed all bounds of that usually tolerated in a civilized community."  <u>Id.</u>

Plaintiff's claim for intentional infliction of emotional distress is derivative of his claims of violations of his civil rights under federal law and false arrest under state law.  There are triable issues of fact regarding Plaintiff's claims for unlawful seizure, First Amendment retaliation, and false arrest against Defendant Marioni, particularly regarding the existence of probable cause. Additionally, Plaintiff's declaration states that, after he was arrested, he "started having a panic attack."  (Feiman Decl. iso Opp. ¶ 15.)  Panic attacks may be sufficient emotional distress for an intentional infliction of emotional distress claim. <u>See e.g.</u>, <u>Kelly-Zurian v. Wohl Shoe Co.</u>, 22 Cal. App. 4th 397 (1994).  Therefore, the Court finds that there is a triable issue of fact as to Plaintiff's

intentional infliction of emotional distress claim
against Defendant Marioni.

Plaintiff has not argued that he suffered, or
provided any evidence of, severe or extreme emotional
distress proximately caused by Defendant Dimas's
alleged ignoring of his requests to make phone calls.
The Court finds that no triable issue of material fact
exists as to Plaintiff's intentional infliction of
emotional distress claim against Defendant Dimas.

Thus, the Court GRANTS Defendants' Motion for
Summary Judgment on Plaintiff's intentional infliction
of emotional distress claim against Defendant Dimas
and DENIES the Defendants' Motion for Summary Judgment
on Plaintiff's intentional infliction of emotional
distress claim against all other Defendants.

**D.   Negligence and Negligent Employment**

Plaintiff has abandoned his negligence claim.
(Pl. Opp. at 1-2.)  Additionally, because Plaintiff's
negligent employment/retention/supervision claim is
only alleged against Timothy Jackman, who was
dismissed from Plaintiff's Complaint, with prejudice,
the Court DISMISSES Plaintiff's sixth cause of action.

The Court GRANTS Defendants' Motion for Summary
Judgment on Plaintiff's negligence claim.  The Court

1   DENIES Defendants' negligent

2   employment/retention/supervision claim as moot.

3

4   **E.   California Civil Code § 52.1**

5

6      A plaintiff must show that the defendant used

7   "threats, intimidation, or coercion" to interfere with

8   the plaintiff's state or federal constitutional rights

9   to prevail on a claim under the Bane Act.  Cal. Civ.

10  Code § 51.1(a), (b).  "[W]rongful arrest and

11  detention, without more, cannot constitute 'force,

12  intimidation, or coercion' in accomplishing his

13  allegedly unlawful arrest."  <u>Gant v. County of Los</u>

14  <u>Angeles</u>, 765 F. Supp. 2d 1238 (C.D. Cal. 2011);

15  <u>Shoyoye v. County of Los Angeles</u>, 203 Cal. App. 4th

16  947, 959 (2012) ("where coercion is inherent in the

17  constitutional violation alleged . . . the statutory

18  requirement of 'threats, intimidation, or coercion' is

19  not met.  The statute requires a showing of coercion

20  independent from the coercion inherent in the wrongful

21  detention itself").  Therefore, even assuming that

22  Defendant Marioni lacked probable cause to arrest

23  Plaintiff, the unlawfulness of the arrest alone is

24  insufficient to state a claim for relief under § 52.1.

25  There is no evidence on the record that Officer

26  Marioni used threats, intimidation, or coercion in

27  Plaintiff's arrest.  Plaintiff's testimony only shows

28

that the arrest was done quickly and Defendant Marioni handcuffed him "expertly." (Feiman Depo. at 38:11-14.)  Additionally, Plaintiff has not shown that Defendant Dimas used any threats, intimidation, or coercion when she allegedly violated his due process rights by ignoring his requests to make phone calls.

Thus, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's Section 52.1 claim.


**V.   CONCLUSION**

For the foregoing reasons the Court:

1. DENIES Plaintiff's Motion for Summary Judgment;

2. GRANTS Defendants' Ex Parte Application;

3. DENIES Defendants' Motion for Summary Judgment on Plaintiff's claim of unlawful seizure in violation of 42 U.S.C. § 1983;

4. GRANTS Defendants' Motion for Summary Judgment on Plaintiff's claim of excessive force in violation of 42 U.S.C. § 1983;

5. DENIES Defendants' Motion for Summary Judgment on Plaintiff's claim of First Amendment retaliation in violation of 42 U.S.C. § 1983;

6. DENIES Defendants' Motion for Summary
   Judgment on Plaintiff's due process
   violation claim;

7. GRANTS Defendants' Motion for Summary
   Judgment on Plaintiff's Section 1983
   conspiracy claim;

8. GRANTS Defendants' Motion for Summary
   Judgment on Plaintiff's Section 1983
   <u>Monell</u> claim;

9. DENIES Defendants' Motion for Summary
   Judgment on Plaintiff's false imprisonment
   claim;

10. GRANTS Defendants' Motion for Summary
    Judgment on Plaintiff's intentional
    infliction of emotional distress claim
    against Defendant Dimas and DENIES the
    Defendants' Motion for Summary Judgment on
    Plaintiff's intentional infliction of
    emotional distress claim against all other
    Defendants;

11. GRANTS Defendants' Motion for Summary
    Judgment on Plaintiff's negligence claim;

12. DISMISSES Plaintiff's negligent
    employment/retention/supervision claim and
    DENIES Defendants' Motion for Summary
    Judgment on Plaintiff's negligent

employment/retention/supervision claim as
moot; and

13. GRANTS Defendants' Motion for Summary
Judgment on Plaintiff's Section 52.1
claim.

Dated:  October 3, 2013        _____
                                      Jesus G. Bernal
                               United States District Judge